22373

In the Matter of Edward W. RUSHTON, Jr., Respondent.

(335 S. E. (2d) 238)

Supreme Court

*Atty. Gen. T. Travis Medlock, Sr. Asst. Atty. Gen. Richard B. Kale, Jr.,* and *Deputy Atty. Gen. William K. Moore,* Columbia, *complainant.*

*Kermit S. King,* Columbia, *for respondent.*

Heard July 12, 1985.

Decided Sept. 25, 1985.

*Per Curiam:*

This attorney disciplinary matter is before the Court as a result of a report and recommendation of the Board of Commissioners on Grievances and Discipline. We agree that the Respondent, Edward W. Rushton, Jr., is guilty of misconduct. We are not in agreement with the recommended sanction. The ultimate responsibility of determining sanctions is in this Court. *Burns v. Clayton,* 237 S. C. 316, 117 S. E. (2d) 300 (1960).

The complaint, which alleged two counts of misconduct, first charged that the Respondent appeared in his office in an intoxicated condition while conferring with clients. Secondly, it charged the Respondent had co-mingled funds of clients by depositing their monies in his personal account. Both charges are abundantly supported by the trial record which was before the hearing panel.

In response to a question, the Respondent testified as follows:

Q. When on September 30, 1983, when late in the afternoon you had these clients, the Towles and Mrs. Merritt, coming into your office, there is no question but at that time, when they were in there, you were under the influence of alcohol?

A. That is correct.

The second count grows out of representations that the Respondent made to Mrs. Towles and to Mrs. Wallen concerning their subscribing to stock in First Trident Savings and Loan Association and the handling of funds incident thereto. In 1983, the law firm of Wise and Cole, the Re-

spondent's employer, was actively engaged in promoting and establishing Trident.

On May 27, 1983, Respondent submitted a subscription agreement for 2000 shares of stock. The application called for issuance of the stock in the Respondent's name. Thereafter, Respondent suggested to several clients that they invest in Trident.

On August 26, 1983, Charlanne Towles gave him her check payable to "Edward W. Rushton, Jr., Trustee" in the amount of $5,000.00 for purchase of 500 shares. Mrs. Towles executed a stock subscription agreement reflecting her name, the amount of stock purchased and the amount submitted.

On August 20, 1983, Mrs. Anne T. Wallen delivered a check payable to "Edward W. Rushton, Jr. as Trustee" for $5,000.00 and executed a stock subscription agreement reflecting her name as subscriber for 500 shares.

On October 10, 1983, Edward W. Rushton, Sr. (father of the Respondent) executed a stock subscription agreement reflecting the purchase of 700 shares for the amount of $7,000.00 with him as subscriber.

On September 7, 1983, Respondent reduced his original request from 2,000 shares to 1,700 shares. On September 7, 1983, Respondent deposited the funds of these three clients in his own personal account. On that same date, he issued his personal check in the amount of $17,000.00 to Trident; it cleared on September 12, 1983.

For some time, members of his employing firm had been alerted and were suspicious of the Respondent's drinking habits. After they learned of his intoxication in the office in the presence of clients on September 30, 1983 and after they learned of the co-mingled funds, they prepared a letter dated October 3, 1983, directed to Trident requiring them to issue the stock in the name of the true owners. Respondent signed at their instigation, and his employment was promptly terminated.

Apparently, Respondent led the three subscribers to believe that he was trustee for Trident which was not true. The checks given to the Respondent by these three subscribers should have been made payable to Trident or to the law firm and deposited in its trust account. Except for the letter written at the instigation of members of the employing firm,

Trident presumably would have issued all of the stock to the Respondent. No explanation has been given as to why Trident was not notified at least after September 7, 1983 and before October 3, 1983, that the true recipients of the stock were Mrs. Wallen, Mrs. Towles and Mr. Rushton, Sr. We agree with the panel and board that there was an improper co-mingling of funds. The fact that no one lost money in this unusual handling of the transactions does not justify the action and at most mitigates culpability.

We have no difficulty in concluding that the Re-spondent has violated the Code of Ethics as relates to both counts and that a sanction is proper. The sanction involves a matter of discretion for this Court. In determining that sanction, we look to the entire record.

Respondent is 47 years of age and a graduate of Duke University Law School in 1958. He was admitted to the North Carolina Bar but permitted his license to lapse for failure to pay dues in 1969. Thereafter, he undertook various employ-ments not especially related to the law. He stood the bar examination in the State of Virginia in the summer of 1981 but failed. The examination was taken again in February of 1982; this time he passed. He worked for a law firm in Roanoke, Virginia, but was terminated on March 15, 1982, when he entered Fenwick Hall, a detoxification institution which works basically with persons who have alcoholic prob-lems located in Charleston, South Carolina. Prior to leaving Roanoke, he was treated at the Roanoke Rehabilitation Cen-ter described as "a general psychologic-psychiatric type fa-cility that is not geared to any one particular malady or problem."

On July 26, 1982, the Respondent interviewed with the law firm of Wise and Cole in Charleston. They obviously did not know of his alcohol problems and of his recent treatment at Fenwick Hall. At the time of his employment, Respondent was not a member of the South Carolina Bar. He applied for admission to the South Carolina Bar November 1, 1982, stood the test in February 1983 and was sworn in October 3, 1983. There were misrepresentations on his application. He admit-ted the following:

[Respondent's Testimony]

A. The question is: 19a — Are you or have you ever been addicted to the use of narcotics, drugs or intoxicating liquors? And the answer I put is no.

\*  \*  \*  \*  \*  \*

A. 19b says, Have you within the past ten years undergone treatment for or consulted any doctor about the use of drugs, narcotics or intoxicating liquors? The answer is no.

Notwithstanding the misrepresentation, the Character and Fitness Committee became aware of his alcoholic problem and after an investigation, recommended that he be permitted to stand the bar examination.

This Court on May 8, 1985, issued its Rule to Show Cause why an appropriate sanction should not be imposed. It was returnable July 12, 1985. On July 8, 1985, his attorney Kermit S. King, Esquire, addressed a letter to this Court reciting that the Respondent apparently no longer wanted his services. In effect Mr. King asked that he be excused from further participation. The request to be relieved was not granted because the hearing was to be held only two days after the receipt of his letter. Mr. King appeared on behalf of Mr. Rushton and represented his client well at the hearing before us. He recited that he had been unable to reach his client after many efforts had been made and that he was unaware of his whereabouts. The Respondent himself did not appear.

Article V of the Constitution of this state imposes upon this Court the solemn responsibility of determining those persons who shall be admitted to the practice of law in South Carolina. By admitting persons to practice, the Court in effect says to the public: "This individual is capable and competent to represent the interest of citizens, to counsel with them at the office, and to try cases in the court."

By a similar token, the Constitution imposes upon this Court the responsibility of removing from the practice those persons whose conduct has been such that they should no longer be entrusted to represent citizens with legal problems. There can be no doubt but that the Respondent has

a long standing alcoholic problem which he has not been able to conquer. He is obviously a person of substantial ability. We do not discount the possibility that at some future date he may be able to conquer his problems and return to the practice of law. Until that time he should not be permitted to hold himself out to the public as a practicing lawyer. Disbarment would eliminate the possibility of his ever returning to the law. Under indefinite suspension, he may at some future date be able to prove himself worthy of returning to the practice of law.

We, therefore, accept the recommendation of the Board of Commissioners on Grievance and Discipline as relates to misconduct. We think, however, that the appropriate sanction in this case is indefinite suspension.

IT IS, THEREFORE, ORDERED that the Respondent, Edward W. Rushton, Jr., be, and he is hereby, indefinitely suspended from the practice of law in this State. He shall within fifteen (15) days of notice of this Order surrender his Certificate of Practice to the Clerk of this Court and shall otherwise as directed comply with the rules of the Court relative to disposition of any business to which he may be attending at this time.