648 S.E.2d 593

**In the Matter of Cletus K. OKPALAEKE, Respondent.**

**No. 26361.**

Supreme Court of South Carolina.

Submitted June 20, 2007.

Decided July 23, 2007.

Henry B. Richardson, Jr., Disciplinary Counsel, and Barbara M. Seymour, Senior Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Cletus K. Okpalaeke, of Columbia, pro se.

PER CURIAM.

This is an attorney disciplinary matter. The Office of Disciplinary Counsel ("ODC") brought formal charges against Respondent Cletus K. Okpalaeke based upon several alleged acts of misconduct. The panel of the Commission on Lawyer Conduct ("the Panel") found that Respondent committed numerous acts of misconduct and recommended that Respondent be disbarred from the practice of law. Neither ODC nor Respondent, who is in default, objected to the Panel's findings or recommendation. We accept the Panel's report, and we hereby disbar Respondent from the practice of law.

### FACTUAL/PROCEDURAL BACKGROUND

In 2005, ODC formally charged Respondent with multiple ethical violations arising out of several otherwise unrelated events. The record indicates that despite attempted service by certified mail and by agents of the South Carolina Law Enforcement Division, Respondent was never served with these formal charges. The record also indicates that Respondent has not filed an answer to these charges. In early 2006, upon request from ODC, the Panel ordered that Respondent be held in default.[1]

The formal charges in this matter describe approximately nine different instances of misconduct. Briefly summarized, these instances include:

### A. The Drivers' License and Office Management Matters

Respondent attended law school in Minnesota and graduated in 1993. Respondent moved to South Carolina in 1996, and

---

[1]. The record illustrates that in 2005, the SLED agent attempting to serve Respondent had discussions with Respondent's neighbor and also the current owner of Respondent's former place of business. Both individuals professed that they had not seen Respondent in over a year and that Respondent had previously indicated that he would shortly be moving to the country of Nigeria. According to the United States Immigration and Customs Enforcement Division, the last entry on Respondent's passport is dated December 24, 2004 and indicates that Respondent left the United States for Amsterdam, Holland, via the Atlanta International Airport. SLED has placed Respondent's information in the Treasury Enforcement System so that local law enforcement will be notified if Respondent re-enters the United States.

Respondent was sworn in to the practice of law in South Carolina July 23, 1997.[2] When Respondent moved to South Carolina, he had a valid Minnesota drivers' license. Respondent did not obtain a South Carolina drivers' license after his relocation. Instead, Respondent drove using his Minnesota license until it expired. Respondent then drove without a valid license until he was arrested in 1999 for driving under the influence of alcohol and for driving without a valid license. Respondent pled guilty to these charges.

Respondent's law office was a solo practice, and Respondent rented office space from a friend, Doe. Respondent allowed Doe, a non-lawyer, to manage major aspects of Respondent's law practice. Respondent gave Doe signatory authority on Respondent's operating and trust accounts, and Respondent also gave Doe supervisory authority over the office while Respondent was out of the country.

According to ODC, Respondent failed to deposit client funds into his trust account and commingled his funds with client funds when he processed settlements through his operating account. Respondent also allowed Doe to handle client settlements without the supervision of an attorney and Respondent disbursed client settlement funds from his operating account in the form of checks made payable to "cash." According to ODC, eleven checks drawn on Respondent's operating/trust account were returned for insufficient funds during a six month period in 2000. During that same period, ODC alleged that the balance in this account dropped below zero thirty-four times.

## B. The Court Reporter Matter

Respondent ordered copies of a deposition transcript and failed to pay the court reporter who prepared the transcript. When the court reporter attempted to collect on the bill from Respondent, Respondent asserted that it was his client's obligation to pay the bill. Eventually, the court reporter sought assistance from the presiding judge, who wrote Respondent

---

**2.** Respondent was born in Lagos, Nigeria, and moved to the United States to attend Winona State University in Winona, Minnesota, in 1980. Respondent received his undergraduate degree from that institution in 1990. Respondent attended William Mitchell College of Law in St. Paul, Minnesota, and graduated in June 1993.

two letters insisting that Respondent pay the bill. Although Respondent ultimately settled his client's case for an amount that would have covered the bill, the client reneged on the settlement and refused to sign the release. Respondent never paid the bill, and the bill now totals $4,219.80.

### C. The Jury Questionnaire Matter

In connection with the same lawsuit, Respondent ordered a copy of a jury questionnaire packet. The invoice provided to Respondent requested payment of $344.06. Respondent did not pay this bill and instead asked his client to do so. The client did not pay the bill, however, and the bill allegedly remains unpaid.

### D. The Client A Matter

Respondent received a call from a non-lawyer assistant who worked for an attorney who had been suspended from the practice of law. The assistant asked whether Respondent would take over some of the suspended attorney's cases. After speaking with the suspended attorney, Respondent agreed to review some of the files. One of these files pertained to an automobile collision claim for Client A.

According to ODC, Client A, a resident of New York, had a potential personal injury claim and Client A's mother had consulted the suspended attorney about pursuing this claim. Respondent reviewed this file, contacted Client A's mother, and agreed with the mother that Respondent would send letters of protection to Client A's medical providers. In these letters, Respondent indicated that Client A had retained Respondent's firm to represent him in connection with the accident. According to ODC, these representations were false because Respondent had no intention of representing Client A unless the at-fault party was willing to pay a settlement in the matter.

Respondent also allegedly agreed with Client A's mother that he would send a "scare letter" to the at-fault party. In the letter, Respondent falsely indicated that he had been retained by Client A and Respondent accused the at-fault party of perjuring himself in traffic court. Respondent demanded payment of Client A's claim and Respondent asserted that if the party did not settle the case within two weeks,

Respondent would contact the local judge and prosecutor for the purpose of pursuing perjury charges. Respondent received no response and took no further action.

### E. The Property Dispute Matter

A party involved in a dispute over the purchase of real property retained Respondent to represent him in the dispute. On his client's behalf, Respondent sent a letter to the adverse party in the dispute informing the party of Respondent's representation. The letter additionally accused the adverse party of extortion and grand larceny. Furthermore, the letter indicated that Respondent had contacted the solicitor's office, who had in turn been in contact with the sheriff and the South Carolina Law Enforcement Division about the matter. The letter stated that Respondent intended to file a civil action based on the dispute and the letter indicated that the solicitor was going to handle the criminal case. Respondent further asserted in the letter that he believed the adverse party "would likely serve prison time" as a result of his conduct.

According to ODC, Respondent's representations that he had been in contact with the solicitor's office and with law enforcement were false. In response to this letter, the adverse party offered to refund Respondent's client's money in exchange for a release. Seeking additional information, Respondent replied to this offer and requested a response from the adverse party within three days. Respondent asserted that after that time he would "not be able to stop the process of this action and [the adverse party] will be picked up."

### F. The Process Server Matter

The complainants in this matter are process servers who were retained to serve a summons, complaint, and interrogatories on Respondent's client. The complainants attempted to serve Respondent's client at her workplace, but the woman who answered the door at the building alleged that Respondent's client was not present at that time. The complainants waited outside the business, observed Respondent's client leave the building, and attempted to serve Respondent's client in the parking lot when she returned. The complainants photographed their attempt to serve Respondent's client, but the client denied that she was the person named in the

pleadings. The client threw the pleadings back at the complainants and then closed the gate to the parking lot, locking the complainants inside the lot.

The client then instructed an employee to call Respondent. When Respondent arrived, he used his car to further block the complainants' exit and he asserted that the complainants' photographing his client violated his client's rights. The complainants asked that they be allowed to leave, but Respondent refused to move his vehicle. The complainants eventually phoned the police, and after the police arrived, Respondent moved his vehicle so the complainants could leave.

## G.   The Custody Dispute Matter

Respondent represented a defendant in a custody dispute in family court. In connection with the case, Respondent issued three subpoenas listing Respondent as the attorney for the plaintiff, even though Respondent represented the defendant. One subpoena was served on the Department of Social Services requesting responses to discovery, and a second subpoena was served on the plaintiff's landlord demanding information regarding the plaintiff's rental agreement. The third subpoena was directed to the defendant's child's doctor and requested discovery responses. According to ODC, these subpoenas violated several court rules. The record discloses that the family court held a sanction hearing relating to this conduct and that the judge admonished Respondent for his conduct.

## H.   The Client B Matter

Respondent received approximately $18,000.00 in settlement of a claim brought by his client, Client B. Respondent issued a check from his office account to Client B for $11,000.00 as her portion of the settlement. The check was returned to Client B's bank due to Respondent's account lacking funds sufficient to cover the check. Client B made several attempts to obtain her money from Respondent, and although Respondent eventually issued a second check to Client B, this check contained no date and the letter accompanying the check requested that it not be negotiated until Respondent confirmed that there were funds sufficient to cover it. According to ODC, Client B has still not received her portion of the settlement proceeds from her claim.

## I. The Client C Matter

Respondent collected $17,000.00 for Client C and failed to pay her medical bills. According to ODC, Respondent has not responded to the notice of an investigation in this matter.

### PANEL'S RECOMMENDATION

The Panel noted that because Respondent did not appear at the disciplinary hearing, Respondent was deemed to have admitted the factual allegations of the formal charges and conceded to ODC's recommended sanction. *See* Rule 24(b), RLDE, Rule 413, SCACR. Based upon these facts and ODC's recommendations, the Panel found that Respondent violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15 (failing to safekeep client funds); Rule 1.3 (diligence); Rule 3.4 (fairness to opposing party and counsel); Rule 4.1 (truthfulness in statements to others); Rule 4.3 (dealing with an unrepresented person); Rule 4.4 (respect for rights of third persons); Rule 4.5 (threatening criminal prosecution); Rule 5.3 (failing to adequately supervise nonlawyer employee); Rule 5.5 (assisting in the unauthorized practice of law); Rule 8.1 (cooperation in disciplinary matters); Rule 8.4(b) (committing a criminal act); Rule 8.4(d) (dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (conduct prejudicial to the administration of justice).

ODC recommended that Respondent be disbarred from the practice of law, and the Panel held that even without Respondent's concession of the appropriateness of this sanction, disbarment was the proper punishment in this matter. The Panel based this finding on two aggravating factors. First, the Panel held that this matter presented multiple violations including repeated conduct calling Respondent's honesty and integrity into question. Second, the Panel held that Respondent's failure to answer the charges or appear at the disciplinary hearing indicated an obvious disinterest in the practice of law. For these reasons, the Panel recommended that Respondent be disbarred from the practice of law.

### DISCUSSION

The South Carolina Supreme Court possesses the ultimate responsibility of determining sanctions in attorney

disciplinary matters. *In re Rushton,* 286 S.C. 543, 544, 335 S.E.2d 238, 238 (1985). The instant case presents several different acts of serious misconduct, and after fully considering the misconduct at issue, we hold that disbarment is the appropriate sanction in this matter.

As we have recounted, Respondent failed to properly disburse settlement money in both the Client B and Client C matters, threatened criminal prosecution in order to gain advantage in a civil matter, was untruthful in statements and conduct towards others, and systematically failed to properly oversee and fulfill the financial obligations of his law practice. Such conduct reflects extremely poorly on the legal profession and has the potential to inflict direct harm on members of the general public. In short, we agree with the Panel that the instant case presents repeated conduct calling Respondent's honesty and integrity into question.

Furthermore, we agree with the Panel's finding that Respondent's conduct indicates an obvious disinterest in the practice of law. By all accounts, Respondent has left this jurisdiction with no apparent intention of returning. Respondent departed this jurisdiction with the knowledge that disciplinary action against him was imminent,[3] and since his departure, Respondent has shown no regard for the status of his license to practice law in South Carolina. As this Court has noted, a central purpose of the attorney disciplinary process is to protect the public from unscrupulous or indifferent lawyers. *In re Hall,* 333 S.C. 247, 251, 509 S.E.2d 266, 268 (1998). Furthermore, we have disbarred attorneys who fail to answer formal charges or appear at hearings before the Panel or this Court in egregious cases. *See, e.g., In re Wofford,* 330 S.C. 522, 500 S.E.2d 486 (1998). Respondent has violated numerous provisions of Rule 7 of the Rules for Lawyer Disciplinary Enforcement, set forth in Rule 413, SCACR, by violating the Rules of Professional Conduct; by failing to respond to a lawful demand from a disciplinary authority; by being convicted of a serious crime; by engaging in conduct tending to pollute the administration of justice or bring the court or legal

---

**3.** This Court refused to accept an Agreement for Discipline by Consent between Respondent and ODC in December 2004.

profession into disrepute, or demonstrating an unfitness to practice law; by violating the oath of office; and by willfully violating the financial record keeping requirements contained in Rule 417, SCACR. In light of this misconduct, the Panel's recommended sanction of disbarment is more than adequately justified.

### CONCLUSION

We conclude Respondent's misconduct warrants disbarment from the practice of law. Within fifteen (15) days of the date of this opinion, Respondent shall file an affidavit with the Clerk of this Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

Within thirty (30) days of the date of this opinion, ODC and Respondent shall file a restitution plan with the Court. In the plan, Respondent shall agree to pay restitution to any party who incurred losses as a result of his misconduct in connection with this matter. Furthermore, in addition to all other requirements Respondent must meet to be reinstated under Rule 413, no petition for reinstatement shall be accepted until Respondent has filed proof that he has made full restitution to all institutions and individuals who have lost money as a result of his misconduct, including restitution to the Lawyers' Fund for Client Protection for any payment it may make.

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.