713 S.E.2d 297

**In the Matter of James Gerald LONGTIN, Respondent.**

**No. 27009.**

Supreme Court of South Carolina.

Heard April 19, 2011.

Decided July 18, 2011.

Lesley M. Coggiola, Disciplinary Counsel, and C. Tex Davis Jr., Senior Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Council.

Jeffrey M. Butler, of Walterboro, for Respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) filed formal charges on allegations of misconduct against James Gerald Longtin (Respondent) stemming from six separate complaints. Following a hearing, the Hearing Panel of the Commission on Lawyer Conduct (Panel) recommended Respondent be suspended from the practice of law for a period of six months, along with certain other requirements. ODC took exception to the Panel Report on several grounds. We agree with the exceptions taken by

ODC, and order Respondent's suspension from the practice of law for a period of nine months from the date of this opinion. Further, we adopt all other sanctions recommended by the Panel with the additional requirement that Respondent appear before the Committee on Character and Fitness prior to reinstatement.

## I. FACTUAL/PROCEDURAL HISTORY

### *Matter A*

Respondent was the attorney of record for approximately five cases before the Honorable J. Michael Baxley in the circuit court. On October 31, 2005, Respondent arrived late to a roster meeting, where he informed the court that the five cases were all default cases. Therefore, the court advised Respondent to provide default motions and proposed orders for each case within ten days of the roster meeting. Respondent did not provide the requested motions and orders within that timeframe, nor thirty days after the original deadline when the court reminded Respondent to file the motions and proposed orders. Consequently, the court dismissed each case with prejudice for lack of prosecution.

In November 2005, the Honorable Doyet A. Early III issued an Order and Rule to Show Cause for Respondent to appear and show cause why several cases should not be dismissed for failure to prosecute. At the hearing on November 30, 2005, Respondent was unable to provide the court with a satisfactory reason for failing to file the necessary motions and orders to conclude the cases. Therefore, the court ordered Respondent to provide a full report on all of the cases within one week of the hearing. Respondent did not comply with the court's directive until January 6, 2006.

### *Matter B*

An out-of-state client retained Respondent to handle various collection matters. By letter dated October 28, 2005, the client requested Respondent return all case files and provide a detailed status report of the work he performed. Respondent did not reply, and the client mailed a follow-up letter in December 2005. By letter dated January 10, 2006, Respondent confirmed he was in the process of closing all of the files;

however, he did not communicate with the client regarding the status of the cases. Despite several telephone calls and another follow-up letter, as of May 1, 2006, when the client filed a grievance with ODC, Respondent had not yet provided the requested information.

ODC notified Respondent by letter dated May 11, 2006, that the client filed a complaint. Respondent replied in a letter dated May 26, 2006, that his failure to provide the requested information was the result of a "misinterpretation." By letter dated February 15, 2007, ODC provided Respondent with a copy of another letter from the client, dated October 26, 2006, indicating Respondent had still not provided the requested information, so ODC requested a written response within fifteen days, stating why Respondent still failed to provide the requested information. Respondent did not respond or otherwise communicate with ODC in response to the letter. Therefore, on March 28, 2007, ODC sent a letter pursuant to *In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982), again requesting a written response. Respondent failed to reply or otherwise communicate with ODC. Consequently, the Commission authorized a full investigation into the matter on June 15, 2007, and served Respondent with a Notice of Full Investigation. Respondent failed to provide a written response to the Notice of Full Investigation.

## Matter C

On March 4, 2003, the United States District Court for the District of South Carolina suspended Respondent from the practice of law, as a consequence of Respondent's previous suspension by this Court on October 28, 2002.[1] In 2004, after Respondent applied to file a complaint in the district court on behalf of a client during his suspension, Chief Judge Joseph F. Anderson Jr. ordered Respondent to begin the process of reinstatement immediately. However, Respondent failed to commence this process, and continued to practice law in the

---

1. The Court previously suspended Respondent for thirty days for failing to communicate and respond to numerous requests for information concerning the status of a client's case; failing to adequately communicate with another client, appear in court on that client's behalf, or timely return phone calls; and failing to cooperate with ODC. *In the Matter of James G. Longtin*, 352 S.C. 21, 22, 572 S.E.2d 282, 282 (2002).

district court and to accept fees from parties seeking relief in the United States Bankruptcy Court, where he represented debtors in ongoing cases. While suspended, Respondent filed thirty-six new cases in federal court.

At a Rule to Show Cause Hearing in 2006, the district court admonished Respondent and suspended him from practicing in the district court for at least one year following his readmission and placed certain other conditions upon Respondent for gaining readmission.[2] However, Respondent subsequently assisted a litigant in filing a motion in the district court while suspended.

## Matter D

In October 2004, Respondent retained the complainant law firm to conduct research and draft an appellate brief in a criminal appeal and paid an initial retainer of $1,500.00. The law firm completed this work in December 2004 and notified Respondent he owed a balance of $803.16, after which the law firm sent numerous letters to Respondent attempting to collect the fee.[3] The law firm made several offers for Respondent to pay half of the amount due in a lump sum or to make smaller monthly installments. Respondent did not avail himself of either option and insisted on paying the full amount due, never contesting the balance. After the law firm filed the grievance in October 2007, and nearly three years after Respondent received the law firm's services, Respondent finally paid the balance. The law firm subsequently abandoned its grievance.

## Matter E

In June 2005, the complainant client retained Respondent to prepare and record a deed, paying Respondent $160.00 in attorney's fees and recording costs. Respondent reluctantly provided the client with the necessary paperwork to execute the deed at home. Within several days, the client returned a

---

2. Respondent remains suspended from practicing law in the district court.

3. All in all, it appears the law firm sent twelve letters between February 28, 2005, and August 28, 2007, and the parties had numerous telephone conversations during this timeframe concerning the bill.

signed deed to Respondent's secretary for recording. Respondent did not record the deed. After several attempts to contact Respondent, the client reached Respondent on the telephone, and he informed her that she had incorrectly executed the deed. The client returned to Respondent's office the next day to execute a proper deed.[4] After executing the second deed, Respondent told the client he would record the deed. For several months, Respondent did not record the deed as promised and the client attempted to contact Respondent. Respondent never replied. Ultimately, the client hired another lawyer to record the deed.

In December 2005, the client filed a complaint in magistrate's court to recoup attorney's fees and filing fees from Respondent. Respondent did not answer.[5] On January 26, 2006, the magistrate court entered a judgment against Respondent. The client contacted the South Carolina Bar's Client Assistance Program (CAP) for assistance. CAP attempted to contact Respondent, but he did not respond. Therefore, CAP contacted ODC in April 2008. By letter to Respondent dated April 8, 2008, ODC requested a written explanation within fifteen days. Respondent failed to respond or otherwise communicate with ODC. On May 5, 2008, ODC sent Respondent a *Treacy* letter again requesting a written response. Respondent finally replied on May 6, 2008. To date, Respondent retains the $10.00 recording fee in his trust account.

## Matter F

In August 2007, the defendant in another collections matter forwarded a check to Respondent to satisfy a debt owed to his client. Respondent told the defendant he would file a Stipulation of Dismissal with Prejudice with the clerk of court, even though the case had already been dismissed. However, Respondent never filed a Stipulation of Dismissal, even after repeatedly telling the defendant he would do so. Respon-

---

4. At the hearing, Respondent testified he did not remember executing a second deed.

5. At the hearing, Respondent testified he was never served with the complaint. However, when he became aware of the judgment in 2008, Respondent did not attempt to have it vacated.

dent's delay in filing the dismissal prevented the defendant from resolving the matter until July 2008.

## Mitigation

Dr. Charlotte Murrow Taylor, who holds a Ph.D. in counseling, testified before the Panel on Respondent's behalf. Dr. Taylor has performed extensive testing on Respondent and currently treats him. She opined that Respondent suffers from Asperger's disorder, adult variety,[6] Attention Deficit Disorder, and anxiety disorder. According to Dr. Taylor, stress from receiving a *Treacy* letter, from a court demanding information, or from an angry client would likely trigger Respondent's avoidant tendencies, causing him to close himself off from subsequent communications. Dr. Taylor testified Asperger's patients are treatable through cognitive behavioral intervention therapy, comprising rote practice of behavioral and social skills. With the aid of medication, Dr. Taylor testified, patients have been known to make great progress under this form of therapy. She testified Respondent is currently taking medication, has been cooperative in his counseling, has reacted positively to treatment, and has made considerable progress since she began treating him.

## Panel's Recommendation

The Panel found Respondent committed misconduct with respect to Matters A, B, and C. However, the Panel found Respondent did not commit misconduct as to Matters D and F, and as to Matter E, the Panel made a partial finding of misconduct.

Therefore, the Panel found Respondent violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (Diligence); Rule 1.4 (Communication); Rule 3.2 (Expediting Litigation); Rule 5.5 (Unauthorized Practice of Law); Rule 8.1(b) (Bar Admission and Disciplinary Matters); and

---

6. Dr. Taylor testified Asperger's disorder is a genetic developmental syndrome, which impairs behavioral development but not intellectual development. She stated Asperger's patients are generally highly intellectual, but adult Asperger's patients commonly have problems interacting with people and functioning under stress. She testified stress tends to exacerbate the common symptoms of withdrawal, avoidant behavior, and confusion.

Rule 8.4(a) (Violation of RPC). Additionally, the Panel found that Respondent violated Rules 7(a)(1), 7(a)(5), and 7(a)(7) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR.

Based on these findings, the Panel recommends this Court: (1) suspend Respondent from the practice of law for a definite period of six months and appoint an attorney to protect clients' interests; (2) order Respondent to pay the cost of the disciplinary proceedings; (3) require Respondent to complete the Legal Ethics and Practice Program Ethics School and Trust Account School as a condition of discipline; (4) require Respondent to continue to follow the recommendations of his treating physicians, including counseling and medication, and to file quarterly treatment compliance and progress reports with the Commission for a period of two years following his return to the practice of law; (5) require Respondent to meet regularly with a Mentor approved by ODC for a period of two years following his return to the practice of law and to file quarterly reports by the Mentor during that time period; and (6) require Respondent to return the $10.00 recording fee which he continues to hold in his trust account to the complainant client.

The Panel considered as aggravating circumstances Respondent's prior disciplinary offense and his obstruction of disciplinary proceedings by intentionally failing to comply with the directives of ODC. The Panel concluded Respondent's diagnosis of Asperger's syndrome did not excuse Respondent's omissions, but did operate to mitigate the severity of any sanctions imposed.

## II. DISCUSSION

The sole authority to discipline attorneys and decide appropriate sanctions after a thorough review of the record rests with this Court. *In re Thompson*, 343 S.C. 1, 10–11, 539 S.E.2d 396, 401 (2000). In such matters, this Court may draw its own conclusions and make its own findings of fact. *Id.*; Rule 27(e)(2), RLDE, Rule 413, SCACR (We "may accept, reject or modify in whole or in part the findings, conclusions and recommendations of the [Panel]."). Nevertheless, the findings and conclusions of the Panel are entitled much respect and consideration. *Id.* Moreover, "[a] disciplinary viola-

tion must be proven by clear and convincing evidence." *In re Greene,* 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see also* Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

## Matters A, B, C, and F

■ We agree with the Panel that Respondent committed misconduct under the facts of Matters A, B, and C, but not under the facts of Matter F. Neither party takes exception to these findings. Accordingly, "the parties are deemed to have accepted the Panel's findings of fact, conclusions of law, and recommendations" as to these matters. *In Re Prendergast,* 390 S.C. 395, 396 n. 2, 702 S.E.2d 364, 365 n. 2 (2010) (citing Rule 27(a), RLDE, Rule 413, SCACR, which states, "The failure of a party to file a brief taking exceptions to the report constitutes acceptance of the findings of fact, conclusions of law, and recommendations.").

Therefore we agree with the Panel that Respondent committed misconduct as to Matter A by failing to prosecute cases adequately on behalf of his clients and to follow orders of the court; as to Matter B by willfully failing to respond to his client and the ODC; and as to Matter C by continuing to practice law in the federal court while suspended. We further agree with the Panel as to Matter F that Respondent's conduct did not evidence any intent to mislead or take advantage of the complainant, nor did his conduct cause her any harm, so Respondent did not violate the Rules of Professional Conduct in that Matter.

## Matter D

■ The Panel did not find Respondent committed misconduct as to Matter D, and ODC takes exception to this finding. We agree with ODC that the Panel erred in finding Respondent did not commit misconduct after failing to pay the case-related expenses to the complainant law firm.

The Panel "was satisfied that Respondent was simply unable to financially pay the [law] firm and did not willfully ignore the bill or refuse to pay it." In addition, the Panel was

inclined to dismiss the allegations against Respondent because the complainant law firm instituted the disciplinary action solely to collect the debt and abandoned its grievance immediately after Respondent paid. However, the Panel was split regarding whether the Rules allow for a finding of misconduct where an attorney fails to pay another attorney case-related expenses. Therefore, the Panel found ODC had not met its burden of proof that Respondent committed misconduct by failing to pay the law firm the case-related expenses until after the grievance was filed.

Rule 8.4(a) of the Rules of Professional Conduct provides "[i]t is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Moreover, Rule 7(a)(5) of the Rules for Lawyer Disciplinary Enforcement states "[i]t shall be a ground for discipline for a lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law." The Court has relied on these provisions in past disciplinary proceedings to find misconduct where a lawyer has failed to pay case-related expenses to a third-party. *See In re Johnson*, 385 S.C. 501, 685 S.E.2d 610 (2009) (disciplining an attorney for failing to pay an expert witness); *In re Okpalaeke*, 374 S.C. 186, 648 S.E.2d 593 (2007) (disciplining an attorney for failing to pay a copy bill to a court reporter); *In re Fulton*, 343 S.C. 506, 541 S.E.2d 531 (2001) (disciplining an attorney for failing to pay a physician's court appearance fee).

Similarly, the appellate work performed by the complainant law firm was a case-related expense, and Respondent's failure to timely pay the balance amounts to misconduct under the Rules. In our view, Respondent did not provide satisfactory reasons for not timely paying the law firm. Respondent maintains, and the Panel concluded, that he was not aware he would owe additional fees when he retained the firm to handle the appellate work and did not have adequate funds to pay the law firm the remainder of the fee charged. However, this does not excuse Respondent's failure to pay the law firm a relatively nominal sum for nearly three years, especially after the law firm made several offers and attempts to negotiate a

payment plan. Therefore, we believe such failure warrants a finding of misconduct under the Rules.[7]

## Matter E

As to Matter E, the Panel found Respondent committed misconduct by failing to timely respond to inquiries from ODC. However, because it found Respondent to be the more credible witness concerning the factual dispute over whether the client returned to Respondent's office to execute the second deed, the Panel found ODC failed to meet its burden of proving Respondent committed misconduct. Nevertheless, the Panel recommended we require Respondent to return the $10.00 recording fee Respondent continues to hold in his trust account. The ODC objected to the portion of the Panel's finding concerning the credibility determination. We agree with ODC that the Panel erred in not finding misconduct under the facts of Matter E because Respondent failed to perform the task for which he was retained.

The Court remains the ultimate fact-finder in disciplinary matters. *See Johnson,* 385 S.C. at 504, 685 S.E.2d at 611 ("We may 'accept, reject, or modify in whole or in part the findings, conclusions and recommendations of the [Panel].'") (quoting Rule 27(e), RLDE, Rule 413, SCACR). Regardless of the factual dispute surrounding the circumstances, it is undisputed that the complainant client hired Respondent to record a deed, and Respondent never completed this task. This fact is evidenced by Respondent's retention of the recording fee in his trust account and the complainant's testimony she was forced through Respondent's inaction to hire another attorney to record the deed and eventually sue Respondent for a refund of these costs and fees. Regardless of whose version of events we believe concerning the preparation of the deed documents for recording, Respondent undoubtedly failed to perform the task for which he was retained. Therefore, we find Respondent committed misconduct with respect to Matter E.

---

7. We note that the law firm abandoned its grievance after Respondent paid the invoice, and remind the bar that the disciplinary process should not be used as a mechanism to collect debts.

### Character and Fitness

█ Finally, we agree with ODC that Respondent should be required to appear before the Committee on Character and Fitness if he chooses to seek reinstatement.

The Panel concluded that Dr. Taylor's testimony "raise[d] serious questions about Respondent's capacity to practice law unless he continues to make substantial progress in his treatment" for Asperger's Syndrome and suggested Respondent receive "close treatment and observation if [he] seeks to return to the active practice of law," but did not recommend screening by the Committee on Character and Fitness prior to reinstatement.

As an initial observation, the instant case presents several egregious acts of misconduct. We are very concerned about Respondent's failure to heed directives from state and federal judges, and to communicate with his clients and ODC. While we find Respondent's actions reprehensible, we are also sympathetic to Respondent's recent diagnosis. However, we must weigh this sympathy against our duty to protect the public from lawyers who may lack the present ability to adequately represent their clients in the courts of this State. Dr. Taylor testified Asperger's patients have the ability to learn to control the kinds of behaviors that led to these proceedings. It is our hope that Respondent will continue to thrive in his treatment plan. However, as an added protection to the public, we find it prudent to require Respondent to appear before the Committee on Character and Fitness if he chooses to petition for reinstatement. The Committee on Character and Fitness is in the best position to ensure Respondent's continued compliance with his treatment plan and will make an informed recommendation concerning Respondent's ability to practice law.[8]

---

8. Of course, we recognize that because we have decided to impose a nine month suspension, instead of the six month suspension recommended by the Panel, the Rules require that any petition for reinstatement be transferred to the Committee on Character and Fitness, unless this Court provides other instructions. Rule 33(d), RLDE, Rule 413, SCACR. The above-stated concerns justify our decision to order Respondent, upon petitioning for reinstatement, to appear before the Committee on Character and Fitness.

CONCLUSION

■ Based on the foregoing reasons, we find Respondent violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (Diligence); Rule 1.4 (Communication); Rule 3.2 (Expediting Litigation); Rule 5.5 (Unauthorized Practice of Law); Rule 8.1(b) (Bar Admission and Disciplinary Matters); and Rule 8.4(a) (Violation of RPC). Additionally, we find Respondent violated Rules 7(a)(1), 7(a)(5), and 7(a)(7) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR. We adopt the Panel's conclusion that Respondent's diagnosis does not preclude findings of misconduct in this case, but does serve to mitigate the sanctions imposed below.

Therefore, we conclude Respondent's misconduct warrants suspension from the practice of law for a period of nine months from the date of this opinion, and during the suspension, we direct the appointment of an attorney to protect clients' interests. Prior to filing any petition for reinstatement, we order Respondent: (1) to pay the cost of these disciplinary proceedings; (2) to complete the Legal Ethics and Practice Program Ethics School and Trust Account School as a condition of discipline; (3) to continue to follow the recommendations of his treating physicians, including counseling and medication; and (4) to return to the complainant client the $10.00 recording fee which Respondent continues to hold in his trust account. Further, any petition for reinstatement shall be referred to the Committee on Character and Fitness. If reinstated, Respondent shall (1) file quarterly treatment compliance and progress reports with the Commission for a period of two years following his return to the practice of law; and (2) meet regularly with a Mentor approved by ODC for a period of two years following his return to the practice of law, and file quarterly reports by the Mentor during that time period.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.