478 S.E.2d 282

**Harvey S. PEELER, Respondent,**

v.

**SPARTAN RADIOCASTING, INC., and
Allan Ray Tedder, Appellants.**

**No. 24531.**

Supreme Court of South Carolina.

Heard April 16, 1996.

Decided Nov. 18, 1996.

Rehearing Denied Jan. 31, 1997.

262

William U. Gunn and Perry D. Boulier, both of Holcombe, Bomar, Cothran, & Gunn, P.A., Spartanburg; Bruce W. Sanford, Henry S. Hoberman, and Stephanie S. Abrutyn, all of Baker & Hostetler, Washington, D.C., for appellants.

Robert G. McCulloch, Jr., and J. Edward Bell, III, both of Bell & Bagley, Sumter, for respondent.

Jay Bender, of Baker, Barwick, Ravenel & Bender, Columbia, for amicus curiae, South Carolina Press Association.

PER CURIAM:

This is an appeal of a defamation case. The jury awarded respondent Harvey S. Peeler $50,000.00 actual damages and $625,000.00 punitive damages. We reverse.

## FACTS

On August 29 and September 1, 1988, appellants broadcast two television news stories on channel WSPA[1] about forgeries of names on a petition to place J.R. Stroupe's name on the ballot for election to the South Carolina Senate. The incumbent, Peeler, brought this libel action alleging these news stories conveyed that Peeler had a role in the forgeries and the public believed he was guilty of forgery.[2] The following is a transcript of the August 29th broadcast:

Ray Tedder: These SLED agents are pouring over petitions that have been filed by J.R. Stroupe, a former Cherokee County Councilman who wants to run for the State Senate. The State Election Commission says that twenty people have signed affidavits saying that they didn't sign the petitions; that someone forged their signatures. These agents are trying to find out if there are more. At

---

1. WSPA is owned by appellant Spartan Broadcasting, Inc. (Spartan).

2. Stroupe eventually pled guilty to forgery.

Stroupe's Service Station near Thickety Mountain, supporters are claiming it's just dirty politics.

*J.R. Stroupe:* Everything was fine until I asked to see them.

*Tedder:* Stroupe says he has hundreds of people working for him trying to get enough signatures to get him on the ballot in November, opposite incumbent State Senator Harvey Peeler. He says he doesn't know who might have forged the signatures, but he claims Peeler or his supporters engineered this problem. Peeler says that's nonsense.

*Harvey Peeler:* The first I heard about it, Ray, was yesterday afternoon. It took me totally by surprise.

*Tedder:* For election officials, finding out who did it is not as important as finding out how many signatures are valid. They have to certify the petition by September the first. In Gaffney, Ray Tedder, TV–7, Eyewitness News.

The following is a transcript of the September 1st broadcast:

*Tedder:* According to South Carolina Election Officials, twenty people claim their names were forged on these petitions. That helped keep J.R. Stroupe twenty-seven away from having enough to get on the ballot opposite incumbent State Senator Harvey Peeler. These SLED agents sorting the petitions are continuing to investigate hoping to find out who committed the crime. J.R. Stroupe is conducting his own investigation. Stroupe wants to prove he had nothing to do with the forgeries, and the supporters who gathered at his service station believe someone in the Peeler camp set Stroupe up. Peeler says he had nothing to do with it. But Peeler will be hard pressed to convince a lot of people. They believe it's just Cherokee County politics as usual.

*John Gimball:* It wouldn't surprise me. I mean, there's so much things that go on that people won't say nothing about.

*Arthur Hall:* My opinion is that Harvey's got something to do with it.

*Tedder:* Stroupe says he's not decided whether to wage a write-in campaign, but his supporters say they will carry on one with or without his active participation. In Cherokee County, Ray Tedder, TV–7, Eyewitness News.

Peeler alleges Tedder misquoted Stroupe in the August 29th story by stating Stroupe had accused Peeler of forgery. In the second story, Peeler alleges Tedder misquoted Gimball and Hall.

The jury returned a verdict of $50,000 actual damages against both appellants and $625,000 punitive damages against Spartan. The trial judge denied appellants' motions for a new trial *nisi*, new trial absolute, and judgment notwithstanding the verdict (JNOV).

## DISCUSSION

■ To recover damages for defamation, a public figure must prove by clear and convincing evidence that the statements were made with actual malice, that is, with knowledge that it was false or with reckless disregard as to its truth or falsity. *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); *Bose Corp. v. Consumers Union*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[3]

Appellants contend we are to conduct an independent *de novo* review of the entire record to determine if there is clear and convincing evidence to support findings of actual malice and falsity.[4] We agree our scope of review on the issue of actual malice is a *de novo* review to determine if there is clear and convincing evidence. However, we do not agree this is the proper scope of review on the issue of falsity.

■ In *Bose*, the United States Supreme Court held there must be an independent review by the appellate court to determine if the evidence in the record supports a finding of

---

3. Peeler conceded below that he is a public official and therefore must prove actual malice by clear and convincing evidence under *New York Times v. Sullivan*.

4. "Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal." *Middleton v. Johnston*, 221 Va. 797, 273 S.E.2d 800, 802. *Accord Clarke v. Cotton*, 207 Ga.App. 883, 429 S.E.2d 291 (1993).

actual malice by clear and convincing evidence. In *Harte-Hanks, supra,* the Supreme Court declined to address whether this mandatory review of actual malice should also be applied to the issue of falsity. *Cf. Locricchio v. Evening News Ass'n,* 438 Mich. 84, 476 N.W.2d 112 (1991) (in private figure plaintiff case independent review of falsity is required as logical corollary of independent review of actual malice required in public figure case). Accordingly, we are required to conduct an independent *de novo* review of the record only on the issue of actual malice.[5]

■ Actual malice is a subjective standard testing the publisher's good faith belief in the truth of his or her statements. The publisher must have entertained serious doubts as to the truth of his publication. *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). To establish recklessness, there must be an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers. *Curtis Pub. Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). "Mere negligence does not suffice." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991).

■ As to the August 29th newscast, Peeler may have proven he did not commit the forgeries, but he failed to prove by clear and convincing evidence that Stroupe did not make the accusation. Peeler presented Haynes Mullinax who testified he was present when Tedder spoke with Stroupe for the interview and Stroupe accused Peeler's supporters but not Peeler. Peeler also offered as evidence of actual malice that no other newspaper or television station had reported that Stroupe had accused Peeler when this story was aired. However, several newspapers did print quotes from Stroupe stating Peeler's supporters had forged the signatures. "A subjective awareness of probable falsity cannot be demonstrated under the standard of 'convincing clarity' by evidence showing that the publisher and the plaintiff disagreed with respect to

---

5. At oral argument, appellants in essence stated if we declined to adopt a *de novo* review on the evidence of falsity, the focus of this appeal should be on whether there is clear and convincing evidence of actual malice.

their perceptions of events which they both observed." *McMurry v. Howard Publications, Inc.*, 612 P.2d 14 (Wyo. 1980). At best, Tedder may have practiced sloppy journalism by referring to Peeler rather than only his supporters, however, there is no evidence in the record that he did so with actual malice.

As to the September 1st newscast, Peeler presented the testimony of Gimball and Hall, the two men interviewed by Tedder. The testimony of these two men does not clearly show that Tedder deliberately misrepresented his interviews with them. Tedder's comment prior to airing these quotes may have been ambiguous, but without additional evidence, we hold this does not amount to clear and convincing evidence of actual malice.

█ Peeler also offered as evidence of actual malice the erasure of the tape containing the newscasts. This is not evidence of actual malice since there was no evidence the erasure was anything other than a routine practice. *Stange v. Cox Enterprises, Inc.*, 211 Ga.App. 731, 440 S.E.2d 503 (1994) (destruction of notes is not evidence of actual malice).

Pursuant to a *de novo* review of the record, we hold there is not clear and convincing evidence to support a finding of actual malice. We need not address appellants' remaining issue.

**REVERSED.**

WALLER, A.J., dissenting in separate opinion.

WALLER, Justice (dissenting).

I respectfully dissent. In my opinion, a *de novo* review of the record demonstrates clear and convincing evidence of malice.

In the August 29th broadcast, Tedder stated, with respect to the forged signatures, that Stroupe "claims Peeler or his supporters engineered this problem." However, both Tedder's deposition, and the testimony of Haynes Mullinax, who was present when Stroupe made the statement, reveal that Stroupe accused only Peeler's supporters, and not Peeler himself, of involvement in the forgeries. In my opinion, the fact that Tedder misquoted Stroupe as accusing Peeler himself

of participation in the forgeries is evidence of actual malice which, when coupled with the misrepresentations of the September 1st broadcast, provide clear and convincing evidence sufficient to submit the case to the jury.

In regard to the September 1st broadcast, it is clear that Tedder edited portions of his interviews with Gimball and Hall, then spliced them in at appropriate junctures to convey the impression their statements implicated Peeler in the forgeries. For example, Tedder says:

Stroupe wants to prove he had nothing to do with the forgeries, and the supporters who gathered at his service station believe someone in the Peeler camp set Stroupe up. Peeler says he had nothing to do with it. But Peeler will be hard pressed to convince a lot of people. They believe it's just Cherokee County politics as usual.

In response to these statements, Gimball and Hall are immediately quoted, stating:

Gimball: It wouldn't surprise me. I mean, there's so much things that go on that people won't say nothing about. Hall: My opinion is that Harvey's [Peeler] got something to do with it.

As reported and spliced into the broadcast, these statements clearly imply that Hall and Gimball believed Peeler had something to do with the forgeries. However, Both Gimball and Hall testified that they specifically told Tedder they did not think Peeler was involved with the forgeries. Gimball testified that his statement was, in reality, a response to an inquiry about general politics and whether or not some politicians may do things which are not right to win an election. It was not, he testified, a statement concerning Peeler or his alleged involvement with the forgeries. Similarly, Hall testified that his statement was made in response to a question as to whether or not Peeler was involved in the investigation of the forgeries; it was not intended to imply that he believed Peeler had anything to do with the forgeries.

As broadcast, the statements of both Gimball and Hall convey to the listener the impression they believed Peeler was involved in the forgeries. This, however, is not the information reported to Tedder. Moreover, the information which was given to Tedder is spliced and reported out of context. In my

opinion, as a whole, the record reflects more than mere "sloppy journalism." In my opinion, the actions of appellants in misquoting Stroupe, and in splicing and editing the statements of Hall and Gimball, demonstrate a deliberate attempt to convey the false impression that people were questioning Peeler's involvement in the forgeries. In my opinion, this constitutes an "extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers," so as to provide clear and convincing evidence of malice. I would affirm the trial court's denial of the motion for JNOV.[1]

---

1. Further, I would affirm the punitive damage award. In my opinion, the verdict is neither inconsistent nor violative of Spartan's due process rights.