718 S.E.2d 739

**In the Matter of James H. DICKEY, Respondent.**

**No. 27066.**

Supreme Court of South Carolina.

Heard Oct. 6, 2011.
Decided Nov. 21, 2011.
Rehearing Denied Dec. 15, 2011.

340

---

Lesley Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

James H. Dickey, of Atlanta, Georgia, pro se Respondent.

PER CURIAM.

In this attorney disciplinary matter, the Commission on Lawyer Conduct ("Commission") investigated eight allegations

of misconduct against James H. Dickey ("Respondent"). The allegations accused Respondent of, among other things, making false representations to judges and opposing counsel, failing to diligently pursue litigation matters, failing to comply with a fee dispute award and several court orders, engaging in conflicts of interest, and practicing law while on Interim Suspension. The Office of Disciplinary Counsel ("ODC") filed formal charges against Respondent.

A Hearing Panel of the Commission ("Hearing Panel") issued its Panel Report, finding Respondent had committed misconduct and recommended that Respondent: (1) be disbarred; (2) be ordered to pay the costs of the proceedings, attend the Legal Ethics and Practice Program and Trust Account school, and pay the fee dispute award prior to petitioning for reinstatement; (3) pay a fine in an appropriate amount; and (4) comply with such other directives as this Court deems appropriate. Respondent raises seven exceptions to the Panel Report. We find Respondent committed misconduct and impose the following sanctions: a definite suspension of two years, which shall run retroactively to the date of Respondent's Interim Suspension; payment of the costs of these proceedings; and payment of $1,750 to a client as directed by the South Carolina Bar Fee Disputes Resolution Board.

## I. Factual/Procedural History

Respondent, whose office is located in Atlanta, Georgia, is licensed to practice law in South Carolina. The complaints that formed the basis of this disciplinary action involve Respondent's conduct from 2001 through 2006.

In 2005, an attorney filed a complaint against Respondent, alleging Respondent created a fictitious medical record in conjunction with a 1998 automobile accident case. This complaint precipitated Respondent's Interim Suspension on September 27, 2005. The Formal Charges in this case were not filed until March 10, 2009.[1] The Hearing Panel heard testimony on the eight complaints over the course of January 27, 28,

---

1. *In re Dickey,* 366 S.C. 18, 620 S.E.2d 332 (2005). The length of time between Respondent's Interim Suspension and the filing of the formal charges gives this Court cause for concern.

29, and March 22, 2010, and ultimately issued its report on March 15, 2011, wherein it recommended that Respondent be disbarred.

## A. Allegations of Misconduct

Respondent faced formal disciplinary charges in connection with the following eight matters:

### 1. Medical Record Matter

Respondent was retained to represent a client who was injured in an automobile accident that occurred on May 3, 1995, in Hartsville, South Carolina. Medical records indicate the client received injuries to her head, neck, and right knee. Six days after the accident, the client sought follow-up care for headaches and knee pain. The medical record from this follow-up visit made no mention of any complaint concerning the client's heart, and instead noted that the "heart has regular rate and rhythm w/o gallops or murmurs."

Approximately one year later, the client began to experience chest discomfort while working out at the YMCA. Then, while at work on July 31, 1996, the client experienced recurrent chest discomfort and was taken to the Byerly Hospital where she was diagnosed as having had a "myocardial infarction." Subsequently, she underwent treatment at Providence Hospital for that condition. In a medical record dated July 31, 1996, the client's condition was described as "a history of recent exertional chest discomfort" that had been ongoing for the "last two months." The record also states that the client was "[n]egative for a prior history of heart problems," and concludes that the client had suffered an "[a]cute inferior posterior myocardial infarction."

In 1998, Respondent filed a lawsuit on behalf of the client against the at-fault driver in the 1995 automobile accident. On April 27, 1998, Respondent sent a document, which appeared to be a medical record,[2] as part of the settlement

---

2. The document, which did not include a medical-facility letterhead or reference a physician, was similar in appearance to the Byerly Hospital medical record dated July 31, 1996 and provided in pertinent part:

HISTORY: Moderately obese female with a recent history of headaches and *exertional chest discomforts following MVA on 5/3/95.* She developed problems with headaches, confusion, memory loss, and

package to the insurance company (Unisun) for the at-fault driver. Subsequently, Unisun's claims representative provided Respondent's case documents to Andrew McLeod, an attorney retained by Unisun. McLeod testified that he settled the case for the $15,000 policy limit, but clarified that he did not participate in the negotiations and primarily drafted the Covenant Not to Execute. He did, however, believe the document was part of the client's medical records.

In March 2000, Respondent filed an amended lawsuit for underinsured motorist coverage. Lawrence Orr, the attorney who represented the insurance company (Horace Mann) in the underinsured motorist coverage claim, received Respondent's case documents from McLeod. This package, as well as Respondent's discovery, included the document that attributed client's heart problems to the 1995 automobile accident. Orr discovered that the document was not included in the medical records he independently subpoenaed from the client's medical providers.

Months after settling the case, Orr reported the matter to the ODC by letter dated March 7, 2005. On March 24, 2005, Larry Huffstetler, Special Investigator for the South Carolina State Attorney General's Office, received the purported medical document. That same day, Respondent came to the ODC's office to deliver documents pursuant to a subpoena in another disciplinary matter. Upon his arrival, Respondent was taken to a conference room and questioned by Investigator Huffstetler and Assistant Deputy Attorney General Robert Bogan about the document. Respondent denied that he had "manufactured or created any medical record" and "offered no explanation concerning the source of the suspected false medical record." Based on this matter, this Court placed Respondent on Interim Suspension beginning September 27, 2005.

During the subsequent investigation and at the panel hearing on the formal charges, Respondent admitted he had directed an assistant to create the document. Although Re-

---

*chest discomforts* which she thought was indigestion *soon after the MVA*. This had been ongoing for several months and increasing in frequency while at work.

IMPRESSION: Portable chest, but no obvious acute abnormality is identified. Patient has a *history of acute MI following the accident.* (Emphasis added.)

spondent acknowledged the document had the appearance of a medical record, he denied producing it to Unisun or Orr as evidence of a medical record. Instead, Respondent claimed that his purpose for creating and producing the document was only to communicate his theory of the case during settlement negotiations, which was that any settlement for the 1995 automobile accident should include expenses for treatment of the client's heart condition. Respondent further explained that he had attached a "sticky note" to the document to apprise Orr that this document was not a medical record, but rather, his version of the damages. Orr testified there was no such note attached to the documents that he received.

## 2. Unauthorized Practice of Law

On June 30, 2005, Respondent filed a lawsuit against a nursing home and other medical care providers, naming himself as plaintiff "individually and as personal representative of the estate of Ruth S. Dickey, deceased" and asserting claims for wrongful death, gross negligence, and breach of contract.

After Respondent was placed on Interim Suspension for the Medical Record Matter, the circuit court granted summary judgment to the nursing home on October 12, 2005. Respondent filed a motion to reconsider, signing it "James H. Dickey, pro se." In denying the motion, the court referenced Dickey's Interim Suspension and stated that "[w]hile Mr. Dickey is authorized to file this pleading in his individual capacity, he is not in a position to file this pleading on behalf of the Estate." As a result, the court concluded that "Mr. Dickey's efforts to file pleadings on behalf of the Estate by virtue of his being the Personal Representative are not proper and not effective, is an unauthorized practice of law and are not being considered by the Court...." [3]

On May 26, 2006, Respondent appeared in circuit court to oppose a motion for summary judgment that was filed by another defendant in the above-referenced lawsuit. The circuit court continued the hearing and ordered Respondent to retain counsel and respond to matters pending in the case no

[3]. We note that this Court appointed an attorney to protect the interests of Respondent's South Carolina clients during Respondent's Interim Suspension, which began on September 27, 2005. This attorney was relieved on June 5, 2008.

later than June 26, 2006. The circuit court granted summary judgment when it did not receive responsive pleadings and neither Respondent nor counsel for the Estate appeared at the hearing on October 3, 2006. The court further ordered that "all claims made on behalf of the estate of Ruth S. Dickey against [defendant] are dismissed for failure to prosecute, as well as failure to comply with this Court's prior Order [to retain counsel and respond not later than June 26, 2006]."[4]

### 3. Fee Dispute Matter

In October 2000, Hieshia Wright consulted Respondent about an employment discrimination claim. A time sheet summary prepared by Respondent reveals that Respondent began work on Wright's case after this initial consultation. On February 5, 2001, Respondent met with Wright and her husband at a Columbia library and wrote the following on the back of a business card:

$125 pd; consultation. Retainer Fee $1500 plus $250 (preparation and court cost) Will Return $1500 if case not filed for suit. 2/5/01

On July 10, 2001, Respondent mailed Wright a proposed Complaint for her approval. In the transmittal letter, Respondent indicated that there were "strong" claims to be pursued and that the deadline for filing was August 25, 2001. Respondent never filed the lawsuit.

On August 29, 2001, Wright wrote Respondent expressing her "disappointment" with his representation and requesting a refund of $1,750, the amount paid on February 5, 2001. Respondent disputed Wright's entitlement to a refund based on her misunderstanding regarding the terms of Respondent's representation, her desire not to proceed with the lawsuit, and

---

4. Respondent, in his individual capacity, appealed both orders to the Court of Appeals. The court affirmed both orders, finding that only a duly appointed personal representative could initiate a wrongful death action on behalf of the Estate, and a licensed attorney must represent the Estate in court. Because Respondent appealed the circuit court's decisions only in his individual capacity, the court held that Respondent could not maintain the appeals. *Dickey v. Clarke Nursing Home et al.*, Op. No. 2007–UP–098 (S.C.Ct.App. Feb. 23, 2007) and Op. No. 2007–UP–344 (S.C. Ct.App. filed June 29, 2007).

the amount of time Respondent had expended in investigating and preparing her claim.

Wright sought assistance with the fee dispute from the South Carolina Bar by letter dated January 7, 2002, which was initially submitted to the Office of Disciplinary Counsel.

In a letter dated April 5, 2002, an attorney appointed to investigate the fee dispute requested that Respondent submit within thirty days certain documents, including fee agreements, time and bill records, receipt/disbursement ledgers, and any other items Respondent wanted the South Carolina Bar Fee Disputes Resolution Board (Board) to consider. Respondent wrote to the investigator advising that the matter was the subject of a disciplinary complaint and suggested that it should be handled by the ODC; however, he never provided the requested records. In explaining his conduct, Respondent pointed out that Wright had also submitted a complaint to the Office of Disciplinary Counsel based on the same fee dispute. Ultimately, the investigator recommended that Respondent refund $1,750 to Wright. In a letter dated September 9, 2002, the circuit chair informed Respondent and Wright that the Board concurred in the investigator's report and recommendation and that the decision was final.[5]

On October 8, 2002, Respondent appealed the Board's decision to the circuit court. The circuit court dismissed the appeal with prejudice after Respondent failed to file a brief asserting his grounds for relief and failed to appear for the final hearing. The court also denied Respondent's motion to alter or amend.

On May 13, 2004, the Board filed a Certificate of Non–Compliance as Respondent had not satisfied the fee dispute award. Subsequently, Respondent appealed the circuit court's decision to the Court of Appeals. The Court of Appeals dismissed the appeal, finding it did not have jurisdiction as "there is no appeal from a decision of the Resolution of Fee Disputes Board of the South Carolina Bar beyond the circuit court as set forth in Rule 416, SCACR, Rule 20." *Wright v. Dickey,* 370 S.C. 517, 521, 636 S.E.2d 1, 3 (Ct.App.2006), *cert. denied* (May 3, 2007).

---

5. Rule 416, SCACR, Rule 13.

When the Hearing Panel questioned Respondent as to why he had not yet refunded the fee award to Wright, Respondent stated that he was "still challenging the ruling in the matter" and intended to exhaust his legal remedies, which might include federal court. Respondent, however, could not identify any legal action that he had taken since his appeal to the Court of Appeals and specifically stated that he "can't do anything now."

### 4. Conflict of Interest Matter

Respondent's parents divorced in 1981. Sometime after the divorce, a dispute arose as to whether Respondent's father had complied with the division of certain real property. Respondent initiated an action in which he represented his mother against his father. On January 6, 1997, the family court issued an order that required the father to transfer certain property to Respondent's mother. When the father did not comply, Respondent filed a Petition for a Rule to Show Cause in April 2001 to determine whether his father should be held in contempt for failing to deed the property as required by the order.

During the time that Respondent represented his mother adverse to his father, Respondent also represented his father in a legal malpractice action. Respondent's representation of his father began in 1999 and continued through the conclusion of the appeal in June of 2003. Additionally, an opinion by the Court of Appeals lists Respondent as the attorney for his mother and father in an appeal during this same time period.[6]

Respondent testified both parents were aware of his dual representation and he had advised his father that the mother's case had priority. There is no evidence in the record to refute Respondent's testimony.

### 5. Failure to Prosecute Matters

#### a. Samuel Matter

Respondent represented Christina Samuel in a medical malpractice action in Darlington County, captioned 2000–CP–

---

6. *Mut. Sav. & Loan Ass'n v. Dickey et al.,* Op. No. 2000–UP–070 (S.C. Ct.App. filed Feb. 5, 2001).

16–0076, for injuries allegedly caused to her daughter during childbirth in 1997.

By order dated March 22, 2001, the circuit court granted the defendants' motion for summary judgment and dismissed the case with prejudice for Respondent's failure to answer discovery and failure to prosecute. In so ruling, the court found that Respondent had failed to provide any discovery as to potential experts and failed to provide any expert affidavits to support an alleged deviation from the standard of care. With respect to Respondent's failure to prosecute, the judge noted that Respondent had sought multiple continuances as to the defendants' motion to dismiss. Based on Respondent's failure to appear at a scheduled hearing, the circuit court issued an order dated June 30, 2000, which stated "Dickey is on notice that a subsequent failure to appear without prior approval by the court may result in any sanctions the presiding judge may deem appropriate; the sending of a fax without the court's subsequent approval is insufficient to excuse any failure to appear." The defendants' motion to dismiss was ultimately heard via conference call.

Subsequently, a hearing was set for the defendants' motions for summary judgment on the morning of Monday, March 12, 2001. On March 12, 2001, the court received a faxed letter from Respondent in which he requested a continuance. Respondent did not fax the letter to defense counsel, but instead left a telephone message sometime over the weekend informing counsel of the continuance request. Without receiving prior approval from the court, Respondent failed to appear at the scheduled hearing.

Respondent appealed the circuit court's order dismissing Samuel's case to the Court of Appeals. The Court of Appeals summarily affirmed the circuit court's order. *Samuel v. Brown et al.,* Op. No. 2003–UP–751 (S.C. Ct.App. filed Dec. 18, 2003). This Court denied Respondent's petition for a writ of certiorari to review the decision of the Court of Appeals.

When questioned by the Hearing Panel regarding his representation of Samuel, Respondent claimed that he continued to represent her but was unsure whether he had advised her that certiorari was denied by this Court. Respondent admitted that it had been years since he had spoken with Samuel and

that he had never informed her of his Interim Suspension. In his defense, Respondent attempted to establish that he was unable to get in contact with Samuel because her telephone was always "turned off" and her address had changed from that listed on the fee agreement.

Samuel testified the last time she spoke with Respondent was approximately four or five years ago when he informed her that the case was being appealed to the Supreme Court. Samuel stated that Respondent never explained to her why the case had been dismissed. She further testified that she first learned the status of her case two weeks before the panel hearing when Bogan met with her regarding her testimony.

### b. Suber Matter

On September 29, 2000, Respondent filed a lawsuit in Richland County on behalf of a client, Ida Mae Suber, who was injured in an automobile accident. By order dated July 31, 2001, the circuit court dismissed the case based on Respondent's failure to prosecute. After dismissing the insurance carrier with prejudice, the court further stated that "[i]n the event the Plaintiff shall attempt to commence another action against the [remaining defendants], such shall not be commenced before and until attorneys' fees and costs in the amount of Five Hundred and no/100 ($500.00) Dollars have been paid to each of the attorneys for the Defendants, Robert A. McKenzie and Robert W. Buffington."

Thereafter, Respondent filed a motion for reconsideration pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. A year later, while this motion was pending, Respondent filed an identical suit on behalf of Suber on August 1, 2002 without paying the court-ordered fees. The circuit court dismissed this lawsuit due, in part, to Respondent's failure to comply with the prior order. Respondent acknowledged that he did not pay the court-ordered fees before filing the second lawsuit, but explained he took that course of action in order to compel a ruling on his motion for reconsideration because his repeated requests for a ruling were not effective. At the time of the hearing to dismiss the second lawsuit, the Rule 59(e) motion had not been ruled upon.

### c. Darlington/Florence County Matter

Respondent represented his father as the plaintiff in a matter captioned *Dickey v. Holloway,* 1999–CP–16–0346, which was pending in Darlington County and appeared on the roster for the week of March 5, 2001. Respondent also represented the plaintiff in a matter captioned *Arthur v. Sexton Dental Clinic, et al.,* 1998–CP–21–684, which was pending in Florence County and appeared on the roster for the week of March 5, 2001.

On Thursday, March 1, 2001, opposing counsel in the Florence County case called Respondent to inform him the case was on the roster but was not ready for trial. On the morning of Friday, March 2, 2001, Respondent called the office of the Honorable Paul M. Burch, the presiding judge in Florence County, and spoke with the judge's law clerk. Respondent informed the law clerk that the Florence County case was not ready for trial. Written notice of the continuance in the Florence County case was faxed to Respondent at 11:20 a.m. that same day with a message that stated:

Please be advised that Judge Burch has GRANTED your request for a continuance beyond March 2001 for the following matters:

98–CP–21–684, *Arthur v. Sexton Dental Clinic et al.*

Kindly advise the other counsel and the Clerk of Court for this continuance.

Because Respondent did not recall receiving this fax, he testified he only had a "good faith" belief that it would be continued.

On the same day, Respondent sent a letter to the Honorable Sidney Floyd, the presiding judge in Darlington County, concerning the roster meeting scheduled for March 5, 2001. The letter, which was clocked as filed by the Clerk of Court at 4:29 p.m. on March 2, 2001, stated that Respondent had a conflict because the Florence County and Darlington County cases were both scheduled for trial or motions during the week of March 5, 2001. The letter further stated that the *Arthur v. Sexton Dental Clinic et al.,* was a "Trial–3/5/01."

On Monday, March 5, 2001, Respondent appeared for the roster meeting in Darlington County even though opposing

counsel failed to appear. The testimony is divergent as to what transpired during the roster meeting. Respondent testified that he told Judge Floyd that he was ready to proceed to trial in *Dickey v. Holloway*. A former Darlington County Clerk of Court employee also testified that Respondent appeared and said he was ready for trial. Additionally, the Darlington County roster sheets for the week of March 5, 2001 contained handwritten notations that appeared to support the testimony of Respondent and the Darlington County Clerk of Court employee.

In contrast, the Darlington County Clerk of Court testified that Respondent told Judge Floyd that he could not try the Darlington County case as the Florence County case was scheduled for trial and he was selecting a jury that day.[7] The Clerk further testified that once it was determined that the Florence County case was not scheduled for trial, Judge Floyd ordered Respondent to appear on Wednesday, March 7, 2001, to proceed to trial on *Dickey v. Holloway*. Because Respondent did not appear on March 7, Judge Floyd dismissed the case for failure to prosecute.

In his defense, Respondent explained that he fell ill on the night of March 6 and was unable to return to work until March 15. As corroborative evidence, Respondent offered a doctor's excuse dated March 9, 2001. Respondent also offered into evidence an affidavit, which was filed with the Darlington County Clerk of Court's office on April 6, 2001, wherein he stated that when he became ill he notified the Darlington County Clerk of Court's office on March 7, 2001, and requested continuances on all of his pending cases. The affidavit stated that due to Respondent's illness, he was unable to work until March 27, 2001. The former Darlington County Clerk of Court employee also testified that Respondent appeared ill when he attended the March 5, 2001 roster meeting. She further testified that on March 6, 2001, she was instructed by the Darlington County Clerk of Court to notify opposing counsel in Respondent's cases (scheduled for the week of

---

7. The Clerk testified he really did not recall the events of March 7, 2001, but that he was testifying from notes provided by Investigator Huffstetler.

March 5, 2001) that Respondent would be absent and that they should appear to have their cases dismissed.

## B. Aggravating and Mitigating Circumstances

In terms of aggravating circumstances the Hearing Panel considered the following: (1) Respondent's dishonest or selfish motive, particularly with respect to the Medical Record Matter and the Suber Matter; (2) Respondent's pattern of misconduct; (3) seven of the eight allegations of misconduct were proven by clear and convincing evidence;[8] (4) Respondent falsely represented to the ODC's investigator that he had not manufactured the document that appeared to be a medical record; (5) Respondent's refusal to acknowledge the wrongful nature of his conduct and his continued attack on the court system as being "corrupt"; (6) the vulnerability of Wright, who received "no meaningful services" despite her payment of a fee, and Samuel, who was made to believe that her case was still pending; and (7) Respondent's indifference to making restitution as he has not satisfied the Board's award of unearned fees to Wright.

In mitigation, the Hearing Panel considered that: (1) Respondent had no prior disciplinary record; and (2) the disciplinary proceedings had been pending for some amount of time while Respondent has remained on Interim Suspension.

## C. Hearing Panel's Conclusions and Recommended Sanctions

Based on Respondent's misconduct, the Hearing Panel concluded that Respondent had violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (competent representation to a client requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation); Rule 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter); Rule 1.5 (a lawyer shall not charge or collect an unreasonable fee); Rule 1.7 (conflict of interest);

---

8. With respect to the Darlington/Florence County Matter, the Hearing Panel concluded that Disciplinary Counsel did not prove by clear and convincing evidence that Respondent was dishonest with Judge Floyd as to whether his Florence County case had been continued.

Rule 1.16(d) (upon termination of representation, a lawyer shall refund any advance payment of fee or expense that has not been earned or incurred); Rule 3.3 (candor toward the tribunal); Rule 3.4 (fairness to opposing party and counsel); Rule 4.1 (lawyer shall not knowingly make a false statement of material fact to a third person); Rule 5.5 (unauthorized practice of law); Rule 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter); Rule 8.4(a) (it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct); Rule 8.4(d) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (engage in conduct that is prejudicial to the administration of justice).

Additionally, the Hearing Panel found Respondent violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (violate or attempt to violate the Rules of Professional Conduct); Rule 7(a)(3) (willfully fail to appear personally as directed); Rule 7(a)(5) (engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law); Rule 7(a)(7) (willfully violate a valid court order issued by a court of this state or of another jurisdiction); and Rule 7(a)(10) (willfully fail to comply with a final decision of the Resolution of Fee Disputes Board).

Due to the quantity and nature of Respondent's misconduct, the Hearing Panel recommended that Respondent: (1) be disbarred; (2) be ordered to pay the costs of the proceedings, attend the Legal Ethics and Practice Program and Trust Account school, and pay the fee dispute award prior to petitioning for reinstatement; (3) pay a fine in an appropriate amount; and (4) comply with such other directives as this Court deems appropriate.

## II. Discussion

### A. Standard of Review

 This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record. *In re Welch,* 355 S.C. 93, 96, 584 S.E.2d

369, 370 (2003). "The Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law." *In re Hazzard,* 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008). "Although this Court is not bound by the findings of the Panel and Committee, these findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of the witnesses." *In re Marshall,* 331 S.C. 514, 519, 498 S.E.2d 869, 871 (1998).

 "A disciplinary violation must be proven by clear and convincing evidence." *In re Greene,* 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); see also Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel."). "Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established." *Peeler v. Spartan Radiocasting, Inc.,* 324 S.C. 261, 265 n. 4, 478 S.E.2d 282, 284 n. 4 (1996) (citation omitted). "Such measure of proof is intermediate, more than a mere preponderance but less that is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal." *Id.*

## B. Propriety of the State Court System and Disciplinary Proceedings

Although Respondent raises seven separate exceptions, his primary contention is that the Panel Report is invalid or void due to procedural and substantive deficiencies. Specifically, Respondent challenges: (1) the propriety of the state court system as well as the disciplinary proceedings, and (2) the level of proof supporting the findings of misconduct. Thus, in the interest of clarity and logical progression, we have addressed Respondent's exceptions under these two headings and out of the order presented in his brief.

1.

In challenging the propriety of the state court system, Respondent claims he offered evidence that the allegations of misconduct were precipitated by irregularities and corruption

within the state court system. As to the disciplinary proceedings, Respondent directs this Court's attention to the following: (1) the ODC's four-year delay in filing formal charges after Respondent's Interim Suspension; (2) the Hearing Panel's failure to grant Respondent's request for additional discovery time; (3) the appointment and conduct of Robert Bogan as the Special Prosecutor;[9] (4) the conduct of the panel hearing, which included the Hearing Panel's decision to quash Respondent's subpoenas of key witnesses and to question witnesses; and (5) the Hearing Panel's delay in filing the Panel Report.

Based on these claimed procedural irregularities, Respondent asserts that the entire disciplinary proceeding violated his procedural and substantive rights to due process in the suspension of his license to practice law in this state.

As a threshold matter, we note that Respondent for the first time on appeal challenges the appointment of Robert Bogan as a Special Prosecutor [10] and the Panel's method of questioning witnesses during the hearing.[11] Accordingly, we find these arguments are not properly before this Court. See *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on

9. By order dated October 5, 2009, this Court appointed Robert Bogan as Special Prosecutor in this matter. Bogan, who was no longer employed with the South Carolina Attorney General's Office at the time of the hearing, handled the investigation of the complaints against Respondent.

10. Even if properly preserved, we find this contention to be without merit. First, Respondent was apprised of the request and expressed no objection to the order in which this Court appointed the Special Prosecutor. Secondly, any assertion that Bogan engaged in the unauthorized practice of law by prosecuting Respondent's case while employed at another state agency is not supported by the Appellate Court Rule cited by Respondent. Rule 506, SCACR, which deals with the Code of Conduct for Staff Attorneys and Law Clerks, is not applicable to Bogan because he was not a staff attorney.

11. As to Respondent's claim regarding the Hearing Panel's calling witnesses out of order and questioning witnesses, we note that Respondent specifically agreed to the procedure employed by the Hearing Panel and was also given the opportunity to call witnesses out of order. Furthermore, even if we construe the procedure as improper, we find Respondent was not prejudiced as he was given an unlimited opportunity to question the witnesses and adequately present his case.

appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

In view of the foregoing, our analysis turns to assessing the merits of Respondent's remaining claims that involve the limitation of time allotted for discovery, the quashing of Respondent's subpoenas for key witnesses, and the timeliness of the filing of the Panel Report.

a.

 Respondent contends the Hearing Panel improperly refused to extend the time period for discovery. Specifically, Respondent submits that "the time period for the completion of discovery is so limited in terms of sixty days that the hearing and discovery process in this action was completely prejudicial to the Respondent and tantamount to an unconstitutional application of the law."

As we interpret Respondent's argument, he essentially challenges the Hearing Panel's denial of his motion for additional time to complete discovery, which was incorporated into Respondent's Answer to the Formal Charges and clarified in a subsequent motion in which Respondent requested 480 days of discovery (sixty days for each of the eight misconduct allegations).

Initially, we note the chairman was authorized to deny Respondent's motion pursuant to Rule 14(b)(1) of the Rules of Lawyer Disciplinary Enforcement.[12] Furthermore, we find that Respondent was not prejudiced by this decision. Respondent's request for a 480–day period of discovery was clearly excessive and not contemplated by Rule 14 as the time for discovery is sixty days [13] with the possibility of a thirty-day extension. Respondent was also afforded a significant amount of time for discovery as he was served with the formal charges on March 10, 2009, discovery was extended until July 29, 2009, and a pre-hearing conference was held on January 4, 2010, at which time Respondent's motion was denied.[14]

---

12. Rule 14(b)(1), RLDE, Rule 413, SCACR.

13. Rule 25(f), RLDE, Rule 413, SCACR.

14. On November 13, 2009, the Administrative Chairman of the Hearing Panel conducted a hearing for "the purpose of addressing Respondent's

At the pre-hearing conference, the panel chair granted Respondent additional time to issue subpoenas for documents. Significantly, Respondent waited until eight days before the panel hearing to issue subpoenas. Taking into consideration this procedural history, we find Respondent cannot establish that he was prejudiced by the denial of his motion for additional time for discovery.

b.

■ In a related argument, Respondent contends the Hearing Panel committed error in quashing the subpoenas he issued for the Honorable Paul M. Burch and the Honorable Jean Hoefer Toal to produce certain documents and to appear at the panel hearing.[15]

In quashing the subpoenas, the Hearing Panel relied on Rule 45 of the South Carolina Rules of Civil Procedure, which sets forth the requirements for the form, issuance, and service of subpoenas. Based on the provisions of Rule 45, the Hearing Panel found the subpoenas were not timely served and Respondent failed to comply with requirements of witness fees and mileage expenses as to Judge Burch. Additionally, the Hearing Panel found Respondent had failed to demonstrate that the testimony was critical to his case or that it could not be obtained by other means.

Respondent asserts that the provisions of Rule 45 were inapplicable to the disciplinary proceedings. Instead, he contends that Rule 15 of the Rules for Lawyer Disciplinary Enforcement [16] is the governing rule as it specifically applies to subpoenas in disciplinary proceedings.

We find the Hearing Panel correctly quashed the subpoenas based on Respondent's failure to comply with the provisions of Rule 45, SCRCP. Rule 15 authorizes an accused lawyer to

---

motion for additional time to conduct discovery and any other outstanding discovery issues." Despite being notified of this proceeding, Respondent failed to appear. Due to Respondent's absence, the Chairman declined to rule on the motion.

15. Respondent served subpoenas to: (1) Judge Burch on January 22, 2010, and March 10, 2010; and (2) Chief Justice Toal on January 25, 2010, and March 10, 2010.

16. Rule 15, RLDE, Rule 413, SCACR.

request the subpoena of witnesses and documents during the discovery period. Notably, Rule 15 does not include any procedural requirements regarding these subpoenas. Rule 9 of the Rules of Disciplinary Enforcement, however, incorporates the Rules of Civil Procedure in disciplinary proceedings, stating "[e]xcept as otherwise provided in these rules ... the South Carolina Rules of Civil Procedure apply in lawyer discipline cases ... when formal charges have been filed." Rule 9, RLDE, Rule 413, SCACR.

Respondent clearly did not comply with the provisions of Rule 45 as the service of the subpoenas on Judge Burch and Chief Justice Toal was untimely. Furthermore, Respondent has never articulated how the testimony of Chief Justice Toal was necessary to his case. Although it is a closer question whether Judge Burch could have been a material witness as he was involved in certain allegations of misconduct, we conclude that his failure to testify did not prejudice Respondent given all of the documentary evidence related to these misconduct allegations was offered into evidence.

c.

As to the timeliness of the Panel Report, we find the Hearing Panel filed its Panel Report in accordance with the applicable rules of procedure. As Respondent correctly notes, Rule 26(d) of the Rules for Lawyer Disciplinary Enforcement requires the Hearing Panel to submit the record and its report to the Supreme Court within sixty days after the filing of the transcript of a hearing. This time period, however, may be extended by the chair of the Commission pursuant to Rule 14(b)(1) of the Rules for Lawyer Disciplinary Enforcement. This rule further authorizes the chair to grant extensions beyond thirty days if "good cause" is shown.

Despite these provisions, Respondent contends that an extension beyond six months required the permission of this Court. Pursuant to Rule 14, the chair was the proper authority to grant the extension as Rule 14(b)(4) states, "[e]xcept for those periods of time that may be extended by the Commission under (1) above, the Supreme Court ... may grant an extension of time to perform any act required by these Rules." Rule 14(b)(4), RLDE, Rule 413, SCACR; see *In re Crews*, 389 S.C. 322, 336, 698 S.E.2d 785, 792 (2010) (recognizing that

Rule 14(b)(1) grants the chair of the Commission "broad powers to extend or shorten time periods in disciplinary hearings"). Furthermore, this Court implicitly granted the Hearing Panel's request for an extension as we issued an order on July 30, 2010, denying Respondent's motion to dismiss with prejudice due to the untimeliness of the filing of the Panel Report. Finally, any delay in the filing of the Panel Report has been taken into consideration by this Court as a factor in mitigation; thus, we can discern no prejudice to Respondent.

d.

 Respondent claims the above-outlined procedural irregularities and Panel decisions culminated in a denial of his "right to due process in the suspension of his license to practice law in this State for over 5 years."

 "When the State seeks to revoke a professional license, procedural due process rights must be met." *Zaman v. S.C. State Bd. of Med. Exam'rs*, 305 S.C. 281, 284, 408 S.E.2d 213, 215 (1991). However, "[o]ne cannot complain of a due process violation if he has recourse to a constitutionally sufficient administrative procedure but merely declines or fails to take advantage of it." *Id.* at 285, 408 S.E.2d at 215.

We find that Respondent's rights to due process were not violated by the disciplinary proceedings. Initially, we note that this Court was authorized to place Respondent on Interim Suspension based on the ODC's petition involving the Medical Record Matter.[17] In turn, the ODC properly served Respondent with the formal charges. Respondent was then given an opportunity to retain counsel, answer the charges, and engage in discovery. During the panel hearing, the Panel allowed Respondent to cross-examine the ODC's witnesses and challenge its evidence. Additionally, Respondent presented his own evidence in his defense of the misconduct allegations. Although there was delay in the filing of the Panel Report, the

---

**17.** See Rule 17(b), RLDE, Rule 413, SCACR ("Upon receipt of sufficient evidence demonstrating that a lawyer poses a substantial threat of serious harm to the public or to the administration of justice, the Supreme Court may suspend the lawyer or transfer the lawyer to incapacity inactive status pending a final determination in any proceeding under these rules.").

Respondent has been given an opportunity to challenge it before this Court through briefs and oral arguments.

Based on the foregoing, we conclude there was no due process violation as Respondent was provided notice, an opportunity to be heard, and judicial review. See *In re Vora,* 354 S.C. 590, 595, 582 S.E.2d 413, 416 (2003) ("Procedural due process requirements are not technical; no particular form of procedure is necessary. The United States Supreme Court has held, however, that at a minimum certain elements must be present. These include (1) adequate notice; (2) adequate opportunity for a hearing; (3) the right to introduce evidence; and (4) the right to confront and cross-examine witnesses." (citation omitted)); *Kurschner v. City of Camden Planning Comm'n,* 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008) (stating "[t]he fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review").

2.

Respondent contends the findings of the Hearing Panel are without evidentiary support because the ODC did not satisfy its burden to prove the allegations by clear and convincing evidence. In support of this contention, Respondent avers that the Hearing Panel "merely accept[ed] as true the claims of misconduct by the ODC," which were primarily based on circuit court orders that were challenged by Respondent. Essentially, Respondent asserts that the ODC did not present any independent evidence to substantiate the allegations of misconduct. Furthermore, Respondent argues the Hearing Panel failed to consider and include all of the mitigating factors in favor of Respondent.

Although we give some credence to Respondent's claims concerning procedural irregularities in the state court system and the disciplinary proceedings, we find that these deficiencies do not warrant the invalidation of the Panel Report. However, we agree in part with Respondent's arguments as we find the ODC only proved three of the eight allegations of misconduct by clear and convincing evidence. Specifically, as will be discussed, we find the ODC presented clear and convincing evidence that Respondent committed misconduct

with respect to the following: the Medical Record Matter, the Fee Dispute Matter, and the Samuel Matter.

a.

■■■ Deferring to the credibility determinations of the Hearing Panel, we find there is clear and convincing evidence that Respondent committed misconduct in creating the document that appeared to be a medical record.

Facially, the document is formatted similar to that of the Byerly Hospital report and even includes the client's vital signs, thus, giving it the appearance of a medical record. Respondent included the document in the settlement package to the Unisun claims representative and to Orr without alerting them to the fact that the document was not a medical record.

Although it is disputable whether the defense attorneys in the 1998 automobile accident case relied on this document in reaching their settlement agreements, it is evident that Respondent created the document with the intention of establishing that the client's heart condition was caused by the 1995 automobile accident. Given that there were no medical records in evidence to support this causal relation, we agree with the Panel's conclusion that Respondent's creation of this document constituted misconduct.[18] See *In re Pennington*, 380 S.C. 49, 668 S.E.2d 402 (2008) (imposing definite suspension of two years where attorney committed several acts of misconduct, which included the submission of false documents to ODC); *In re Lathan*, 360 S.C. 326, 600 S.E.2d 902 (2004) (finding definite suspension of six months, retroactive to Interim Suspension, was warranted where attorney committed misconduct arising out of false HUD-1 Settlement Statements); *In re Belding*, 356 S.C. 319, 325, 589 S.E.2d 197, 200 (2003) (concluding one-year suspension was appropriate where attorney drafted false documents and "made a conscious effort to make the documents appear authentic").

---

18. During oral argument before this Court, Respondent referenced the record of Dr. Dean Banks, a chiropractor, in support of his position. In our review of the medical records in evidence, we carefully considered this particular document. We, however, found that this document does not relate the client's heart condition to the 1995 automobile accident.

362 

b.

 We find there is clear and convincing evidence to support a finding of misconduct as to the Fee Dispute Matter.

On September 9, 2002, the South Carolina Bar Fee Disputes Resolution Board (Board) notified Respondent of its final decision that Wright was entitled to a fee refund in the amount of $1,750. Respondent, however, continues to dispute the validity of this award based on irregularities in the fee dispute proceedings. Essentially, Respondent claims that he did not have to respond to the fee dispute investigation as he believed the client had filed a separate complaint with the Office of Disciplinary Counsel. Furthermore, he asserts that the Chairman of the Board had a conflict and, thus, should have been disqualified in the proceedings.

Although there may be some merit to Respondent's assertions, they are of no consequence at this stage in the proceedings since Respondent had the opportunity to raise these issues in circuit court. He failed to file a brief and failed to appear at the hearing, thus, effectively waiving any challenge to the finality of the fee award. Moreover, despite clear language in the Rules, which instruct that the circuit court was the final appellate level, Respondent proceeded to appeal the decision to the Court of Appeals. Even after the Court of Appeals dismissed his appeal and this Court denied Respondent's petition for a writ of certiorari in 2007, Respondent still has not tendered the fee award to his client and, thus, has willfully failed to comply with a final decision of the Board.

Accordingly, we agree with the Hearing Panel's finding of misconduct as to this allegation. See *In re Danielson*, 391 S.C. 386, 706 S.E.2d 1 (2011) (imposing two-year suspension where lawyer committed numerous acts of misconduct, including failure to comply with a Final Decision of the Board); *In re Thomson*, 389 S.C. 24, 698 S.E.2d 625 (2010) (issuing public reprimand where lawyer failed to pay fee that was ordered by the Board).

c.

 Of the three findings of misconduct based on Respondent's failure to prosecute, we find only the Samuel Matter was proven by clear and convincing evidence.

Approximately one year after filing the medical malpractice lawsuit, the circuit court granted summary judgment to the defendants due to Respondent's failure to provide potential experts and their affidavits. The court also dismissed the case due to Respondent's failure to appear at scheduled hearings and his request for a continuance in violation of a court order. Once summary judgment was granted any other reason for dismissal was superfluous. Moreover, a litigant cannot be barred from requesting a continuance. A judge only has the option to grant or deny it.

The granting of summary judgment in a medical malpractice case for failure to produce an expert witness is not unusual and would not normally result in disciplinary action for failure to prosecute the case. However, Respondent never informed Samuel of the reason for the dismissal, but only communicated that the case was on appeal. Respondent also failed to maintain contact with Samuel and never informed her that the Court of Appeals had affirmed the circuit court's order, this Court had denied the petition for a writ of certiorari, or that he had been placed on Interim Suspension. In fact, Samuel testified that she was apprised of the status of her case two weeks before the panel hearing when she talked with Bogan about her testimony.

Accordingly, we find there is clear and convincing evidence that Respondent committed misconduct with respect to the Samuel Matter. See *In re Longtin*, 393 S.C. 368, 713 S.E.2d 297 (2011) (concluding nine-month suspension was warranted, in part, by lawyer's failure to prosecute cases adequately on behalf of his clients, to follow orders of the court, and to respond to his clients); *In re Moore*, 329 S.C. 294, 494 S.E.2d 804 (1997) (finding definite suspension of one year was appropriate, in part, where lawyer's neglect resulted in dismissal of client's case for lack of prosecution); *In re Baldwin*, 278 S.C. 292, 294 S.E.2d 790 (1982) (concluding indefinite suspension was warranted where lawyer failed to appear at scheduled court hearings).

3.

Finally, Respondent contends the Hearing Panel failed to consider and include in its report all of the mitigating factors in favor of Respondent. We find this contention to be without

merit as Respondent has presented the additional mitigating factors in his brief to this Court. In reaching our decision, we have considered all mitigating factors that Respondent deems significant.

### III. Conclusion

Based on the three proven incidents of misconduct and the mitigating and aggravating factors, we conclude the following sanctions are appropriate: a definite suspension from the practice of law for two years, which shall run retroactively to the date of Respondent's Interim Suspension; payment of the costs of these proceedings in an amount of $8,073.99; and payment of $1,750, the fee dispute amount awarded to Wright. Prior to petitioning for reinstatement, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with the sanctions imposed by this Court.

**DEFINITE SUSPENSION.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.